THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Pauline J.
 O'Keefe in the matter of Pauline T. Muckenfuss, Appellant,
 v.
 Wendell L.
 Muckenfuss, and Thomas D. Muckenfuss III, Respondents.
 
 
 

Appeal From Charleston County
  R. Markley Dennis, Jr., Circuit Court
Judge

Unpublished Opinion No. 2010-UP-350
 Submitted June 1, 2010  Filed July 7,
2010    

AFFIRMED

 
 
 
 Dennis James Christensen, of Mt. Pleasant, for Appellant.
 Nat B. Benson, Jr, of Mt. Pleasant, for Respondents.
 
 
 

PER CURIAM: Pauline Jane O'Keefe (Daughter) appeals
 the circuit court's order affirming the probate courts orders appointing third
 parties as Pauline Muckenfuss's (Mother's) guardian and conservator.  Daughter
 argues the probate court erred in finding good cause existed to bypass her
 statutorily-designated priority as Mother's attorney-in-fact.  We affirm.[1]  
FACTS/PROCEDURAL HISTORY
Mother is a widow
 who has four children, Daughter, and three sons: Thomas (Tommy), Wendell, and
 Paul Muckenfuss (Sons).  Daughter was designated as Mother's attorney-in-fact in
 October of 2002.  Mother was admitted to the Savannah House, an assisted-living
 facility in Charleston, in November of 2002, following hospitalization for
 mental illness.
On January 29,
 2004, Wendell and Tommy petitioned the probate court to find Mother incapacitated
 and to appoint a guardian and conservator.  After a hearing, the probate court
 ordered third parties Seniors Choice and First Southeast Fiduciary and Trust
 Services, Incorporated, to serve as Mother's guardian and conservator,
 respectively.  Daughter appealed to the circuit court, which affirmed. 
 Daughter then appealed to this court.  
In an unpublished
 opinion, this court held:  "Based
 on the language of the applicable statutes, we believe before a probate court
 bypasses a person with a statutory priority for the appointment of a
 conservator or guardian, it must make a finding of good cause by articulating
 its reasons for such a finding."  Muckenfuss v. Muckenfuss, Op. No.
 07-UP-361 (Ct. App. filed July 7, 2007).  Because the probate court failed to
 make the requisite finding of good cause, we remanded the case to the probate
 court for a finding consistent with the statutes.  Id.  
On remand, the
 probate court found good cause existed to appoint third parties as Mother's
 guardian and conservator due to the friction and divisiveness between Daughter
 and Sons, as well as Daughter's lack of communication with Sons.  The circuit
 court affirmed.  This appeal followed. 
STANDARD OF REVIEW
"[T]he determination of
 the standard of review by an appellate court of matters originating in the
 probate court is controlled by whether the cause of action is at law or in
 equity."  Dean v. Kilgore, 313 S.C. 257, 259, 437 S.E.2d 154, 155
 (Ct. App. 1993).  "To make this determination, the appellate court must
 look to the essential character of the cause of action alleged by the
 petitioners in the court below."  Id.  "Persons of unsound
 mind, like infants, are under the special protection of the courts of equity
 with respect to their persons, property, and legal transactions."  Shepard
 v. First Am. Mortgage Co., 289 S.C. 516, 518, 347 S.E.2d 118, 119 (Ct. App.
 1986); Gaddy v. Douglass, 359 S.C. 329, 333, 597 S.E.2d 12, 14 (Ct. App.
 2004) (recognizing an action to set aside
 a power of attorney and an instrument revoking a power of attorney on the
 ground of a lack of mental capacity sounds in equity); see Dean, 313 S.C. at 259, 437 S.E.2d
 at 155 (finding petition to remove personal representative is in equity).  When the
 circuit court concurs with the probate court in an equity case, the standard of
 review for this court is whether there is any evidence that reasonably supports
 the findings of the court below.  Dean, 313 at 260, 437 S.E.2d at
 155-56.
The specific choice of who
 should serve as guardian and conservator is decided under the probate court's
 discretion.  "The matter of a selection of a guardian is within the
 discretion of the court, and the appellate court ordinarily will not interfere
 unless a clear abuse of discretion is shown."  39 C.J.S. Guardian and
 Ward § 28 (2003).  "The selection of a
 guardian is a matter committed largely to the discretion of the appointing
 court, whose decision will only be interfered with on appeal in the case of an
 abuse of discretion."  39 Am. Jur. 2d Guardian and Ward § 38 (2008).  
The relevant statutes in this
 case, Sections 62-5-311 and 62-5-410 of the South Carolina Code (2009),
 indicate the appointing court has discretion by using the phrases "may be
 appointed guardian" and "the court may appoint . . . as
 conservator," respectively.  The appointing court will not be overturned absent an
 abuse of discretion.  See Patterson v. Cook, 288
 S.C. 220, 221, 341 S.E.2d 782, 782 (1986) (interpreting an appointment statute
 without priority guidelines).  
LAW/ANALYSIS
Daughter argues the probate
 court, and in turn the circuit court, erred in finding good cause to appoint
 third parties as Mother's guardian and conservator because Daughter had
 statutory priority as Mother's attorney-in-fact.  We disagree.  
Section 62-5-311 states the
 order of priority for guardian appointees but provides such priority is
 "subject to a finding of good cause by the court."  Similarly, section
 62-5-410 sets forth the order of priority for conservator appointees but
 allows:  "The court, for good cause, may pass
 over a person having priority and appoint a person having less priority or no
 priority."  Under both statutes, Daughter, as Mother's attorney-in-fact,
 has priority over the third parties appointed by the probate court.  §§
 62-5-311(B)(2) & 62-4-410(a)(3).  
Good cause is
 defined as "[a] legally sufficient reason.  Good cause is often the burden
 placed on the litigant . . . to show why a request should be granted or an
 action excused."  Black's Law Dictionary 251 (9th ed. 2009).  "Bitter
 dissension between an incapacitated person's family members . . . can justify
 appointment of a neutral third party as a guardian."  39 Am. Jur. 2d Guardian
 & Ward § 41 (2008).  
At trial, Dr.
 Susan Hardesty of the Medical University of South Carolina testified Mother
 needed a guardian and conservator.  Dr. Hardesty stated to a reasonable degree
 of medical certainty Mother's capacity did not allow her to manage her
 resources.  
Dr. Hardesty
 testified Mother was paranoid regarding her children's roles in assisting her
 with her affairs.  In addition, she stated the object of Mother's paranoia
 seemed to shift from the Sons to Daughter.  Dr. Hardesty testified having one
 of Mother's children serve as a guardian or conservator 

 would aggravate [Mothers] condition in the sense that her
 condition is going to proceed as it will independent of those kind of external
 forces.  I think she might be more or less angry, depending on where her
 paranoid ideation was at the time if someone interacted -- if one of her
 children made a decision.  But that's going to be dependent on what the
 paranoia is doing at the time.  

The guardian ad
 litem recommended having third parties appointed as guardian and conservator
 for Mother.  The guardian believed a third party serving as guardian and
 conservator would be in the best interest of everyone given the infighting
 between Daughter and Sons.  The guardian believed a third party could
 circumvent current communication problems, but the animosity between Daughter
 and Sons will likely remain regardless of whether a third party is used.  
The guardian
 testified: 

 [Mother] did seem to note and she pointed out very clearly the
 friction that is between her children, and she felt like it would be in the
 best interest of everybody if there was a third person appointed to take care
 of her everyday affairs, throughout the financial matters, because she felt like
 that may reduce the friction.  

The guardian
 testified Mother fully understood what the roles of the guardian and
 conservator would be.  
Dr. Hardesty
 first testified any suggestions by Mother regarding who should serve as her
 guardian and conservator should be given limited weight, if any.  However, when
 questioned by the guardian whether he should put any weight on Mother's recommendation
 to him that a third party should be appointed, she stated:  

 I certainly would put weight on her opinion that she has the
 desire to have a third party to intervene and give it some weight, yes.  I
 wouldn't say it would be the overall decision-maker, but, certainly, she's
 indicated it to you and she's indicated it to me in a different way.  

Mother had, in
 fact, requested Dr. Hardesty intervene in her affairs.  
Paul, Wendell,
 and Daughter all testified about the friction between the siblings.  Paul
 stated he believed having a third party involved in Mother's care would be best
 for everyone.  Wendell also requested a third party's involvement in order to
 reduce the infighting in the family and minimize Mother's paranoia towards her
 children.  Regarding the friction, Wendell testified Daughter would not allow
 him to visit Mother privately on one occasion.  Wendell further testified
 Daughter's husband followed him to the airport and behaved suspiciously. 
 Daughter acknowledged she has difficulty with Wendell, but maintained she gets
 along well with Tommy and Paul.  
In response to
 Wendell's statement that Daughter refused to allow him to see Mother, Daughter
 stated she suggested Wendell not meet with Mother alone because Mother had not
 seen Wendell in years and it would be too shocking for Mother.  According to
 Daughter, while Wendell was speaking to Mother that day, a Savannah House
 employee informed Daughter that Mother's whole body was shaking.  
The guardian, Dr.
 Hardesty, Paul, and a Savannah House employee all testified Daughter has taken
 good care of Mother.  However, the statutes do not require a finding of wrong-doing
 by the person with priority.  They simply require good cause to by-pass the
 person with priority.  The record also contains evidence Daughter failed to
 communicate with her brothers concerning Mother's care.  Paul testified he had
 to call the police to discover the location of Mother when Daughter moved her
 to Savannah House because Daughter failed to notify him of the move.  Daughter
 explained she had told Tommy about the move and assumed he would tell their
 other brothers.  In addition, Daughter acknowledged that because she does not
 get along with Wendell, she has only called him twice during the years she has
 held Mother's power of attorney.  Daughter testified she did not tell her brothers she had the power
 of attorney because Mother requested she not tell them.  
The probate court
 found Daughter made an unsatisfactory showing that she could fulfill the duties
 of a guardian and conservator, which include communicating with family members
 regarding any type of placement and any major medical issues.  We hold the
 record contains evidence to support this finding and the probate court's ruling
 that good cause exists to by-pass Daughter's priority in the appointment of
 Mother's guardian and conservator.  Therefore, under our standard of review, we
 must affirm the probate court.  
AFFIRMED.
HUFF, SHORT,
 and WILLIAMS, JJ., concur.  

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.